IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| FRANCIS GATES et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | 11 C 8715 |
|  | ) | 12 C 2983 |
| SYRIAN ARAB REPUBLIC et al., | ) | 14 C 6161 |
| Defendants. | ) | Judge Virginia M. Kendall |
| JPMORGAN CHASE BANK, N.A.., | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| FRANCIS GATES et al.., | ) | |
| Defendants. | ) | |
| MARY NELL WYATT et al., | | |
| Plaintiffs, | | |
| v. | | |
| SYRIAN ARAB REPUBLIC et al., | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

The Baker Plaintiffs' Rule 60(b) motion is denied. The Wyatt Plaintiffs' motion to stay is denied. The Court's October 22, 2014 order (Dkt. No. 287) remains in effect.

On June 18, 2014 the Seventh Circuit affirmed this Court's orders "to have Syrian assets turned over to the Gates Plaintiffs." *Gates v. Syrian Arab Republic*, 755 F.3d 568, 581 (7th Cir.

2014). In accordance with that mandate, the Gates Plaintiffs moved this Court to release funds held in the Court's registry to them. (Dkt. No. 259). The Wyatt Plaintiffs, a new group of plaintiffs who were not parties to this case, filed an opposition to that motion claiming that the Gates Plaintiffs were not entitled to the funds and that the new group was. (Dkt. No. 261). On October 22, 2014 the Court granted the Gates Plaintiffs' motion to release funds held in the Court's registry. (Dkt. No. 287). Though the Court harbored doubts about the procedural propriety of the Wyatt Plaintiffs' filing, the Court found that the arguments presented failed on the merits and directed the Clerk of Court to release the funds in the Court's registry to the Gates Plaintiffs.

As an initial matter, the Court's October 22, 2014 order definitively directed the Clerk of Court to release the funds held in the Court's registry to the Gates Plaintiffs. That the Court requested a proposed order from the Gates Plaintiffs does not affect the finality of the October 22 order. The Court solicited the Gates Plaintiffs' input because the Gates Plaintiffs had previously submitted a proposed order following the Seventh Circuit's mandate. The Court intended to address all of the points raised in the previous proposed order, but significant litigation had taken place since the Gates Plaintiffs submitted that order. The Court's intention in soliciting a new proposed order was to ensure that the Gates Plaintiffs did not desire to amend their proposed form of judgment following that additional litigation. The Gates Plaintiffs' subsequent filing makes clear that they believed nothing more was necessary to distribute the funds, their subsequent briefing on the current motion to stay notwithstanding. (*See* Dkt. No. 288). To the extent that the purpose of the October 22 order was unclear, the Court now clarifies that the October 22 order directed the Clerk of Court to release the funds held in the Court's registry to the Gates Plaintiffs.

The Wyatt Plaintiffs ask the Court to stay its October 22 order pending their appeal. While the Court presently harbors the same procedural doubts, the Court once again finds that the Wyatt Plaintiffs' arguments would fail on the merits and thus denies their motion.

The Baker Plaintiffs, the losing party in the Seventh Circuit, then filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure urging this Court to reconsider its previous turnover order directing JP Morgan Chase Bank to turn over the proceeds of blocked electronic funds transfers that originated with Banque Centrale de Syrie, an instrumentality of Syria. (Dkt. No. 307). The Baker Plaintiffs argue that two subsequent Second Circuit cases represent an intervening change in the law and that justifies reconsideration. The Court denies the motion because the Baker Plaintiffs waived their right to a Rule 60(b) motion by failing to make the argument on their direct appeal, because the intervening opinions are not binding on this Court, and because they would not require the result that the Baker Plaintiffs desire even if they were.

As a threshold matter, the Court retains jurisdiction over both of the pending motions addressed in this Order. The Wyatt Plaintiffs argue that the Court lacks the authority to distribute the funds because the filing of their notice of appeal divests the Court of jurisdiction to all issues relating to the appeal. The Wyatt Plaintiffs are correct that the filing of a notice of appeal generally divests a district court "of its control over those aspects of the case involved in the appeal." *See, e.g.*, *United States v. Brown*, 732 F.3d 781 (7th Cir. 2013) (internal quotation marks omitted).The Court need take no further action to distribute the funds, however. The Court ordered the Clerk of Court to distribute the funds on October 22. That order remains in effect. Thus, whether the Court retains jurisdiction over any aspect of this case is immaterial to the distribution of the funds held in the registry pursuant to that Order; the Court has done all that is

3

necessary to release the funds. The Court retains jurisdiction over the Baker Plaintiffs' Rule 60(b) motion because that motion is not an "aspect[] of the case involved in the appeal." *Id.*

  A. Baker Plaintiffs' Rule 60(b) Motion

  The Baker Plaintiffs ask the Court to reconsider its previous order transferring blocked EFT funds from JPMCB to the Court's registry. (Dkt. No. 220). In that order, this Court held that blocked EFTs held at JPMCB constituted the "property" BCS because BCS was both originator and beneficiary of the EFT and all intermediary banks had disclaimed ownership of the funds. (Dkt. No. 220 p. 9). The Baker Plaintiffs claim that two Second Circuit cases, *Calderon-Cardona v. Bank of New York Mellon*, No 13-75, 2014 WL 5368880 (2d Cir. Oct. 23, 2014) and *Hausler v. JP Morgan Chase Bank, N.A.*, No. 12-1265, 2104 WL 5420141 (2d Cir. Oct. 27, 2014) (per curiam), constitute an intervening change in the law that justifies relief from the Court's previous order. *Cf. Katherein v. City of Evanston, Ill.*, 752 F.3d 680, 685 (7th Cir. 2014) (district court may "revisit an issue if an intervening change in the law . . . warrants reexamining the claim") (internal quotation marks omitted). The Baker Plaintiffs have waived their right to bring this Rule 60(b) motion by not addressing these issues on their direct appeal. *See Kiswani v. Phoenix Sec. Agency, Inc.*, 584 F.3d 741, 743 (7th Cir. 2009). Moreover, "[n]othing the [Second] Circuit decides is binding on district courts outside its territory. Opinions bind [district courts] only within a vertical hierarchy." *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) (internal quotation marks omitted); *see also Hays v. United States*, 397 F.3d 564, 567 (7th Cir. 2005) ("Even if it is on point, a [Second] Circuit decision is not binding on courts in other circuits.").

  Even if the Court were to entertain the Rule 60(b) motion on the merits, however, the Court would deny the motion. If binding, the intervening Second Circuit opinions would not require the Court to reach a conclusion other than the one it previously reached. Applying New

4

York's U.C.C., the Second Circuit held that "EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank." *Calderon-Cardona*, 2014 WL 5368880 at *6 (citing *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 71 (2d Cir. 2009)). "Because EFTs function as a chained series of debits and credits between the originator, the originator's bank, any intermediary banks, the beneficiary's bank, and the beneficiary, the 'only party with a claim against an intermediary bank is the sender to that bank, which is typically the originator's bank.' " *Id.* (quoting *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111, 118 (2d Cir. 2010)). The Bakers urge, therefore, that Commerzbank, the bank in which BCS held its funds and the institution that transferred the funds to JPMCB is the only party with a property interest in the blocked EFTs.

*Calderon-Cardona* did not address the facts present here. There, the terrorist party had no interested that exceeded "that of an originator or beneficiary in a midstream EFT." *Ruth Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 407 (S.D.N.Y. 2011), *rev'd on other grounds Calderon-Cardona*, 2014 WL 5368880. Likewise in *Hausler*, the terrorist party was the beneficiary of the blocked EFTs at issue. *See Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 560 (S.D.N.Y. 2012), *rev'd on other grounds Hausler*, 2104 WL 5420141. Non-terrorist entities whose property was not subject to attachment had attempted to transfer funds to the terrorist party but the funds were blocked midstream and never became the property of the terrorist party. Therefore, under U.C.C. Article 4A which governs EFTs, the transferring entity had a claim to the funds and the originator had a right of refund from that transferring bank. *See* U.C.C. § 4A-402(d). In other words, the judgment would have been satisfied from funds that did not belong to a terrorist party. Here, that risk is not present. BCS was both originator and beneficiary of the EFTs at issue. Moreover, the transferor immediately

5

preceding JPMCB has disclaimed any interest in the funds. (*See* 11 C 8715 Dkt. No. 185-1). Under the U.C.C., the only party to whom those funds would belong would be BCS.

Moreover, authority from the D.C. Circuit supports precisely this Court's decision with respect to BCS's property interest in the EFT funds. *See Heiser v. Islamic Republic of Iran*, 735 F.3d 934 (D.C. Cir. 2013). In *Heiser*, the D.C. Circuit prohibited attachment of EFT funds directed to Iran when a non-terrorist party was the originator. Also analyzing Article 4A of the U.C.C., the D.C. Circuit noted that "claims on an interrupted funds transfer ultimately belong to the originator, not the beneficiary or its bank." *Id.* at 941. Here, the Court has already found, and no party contests, that BCS is the originator of the EFT funds at issue. Under the reasoning of *Heiser*, the funds would belong to BCS and would therefore be attachable.

The Court's conclusion is also consistent with the purpose of the FSIA and TRIA. The broad purpose of the statutory regime is to compensate victims of state sponsored terrorism at the expense of state sponsors of terror. *See Heiser*, 735 F.3d at 940 ("If potentially innocent parties pay plaintiffs' judgment, then the punitive purpose of these provisions is not served."); *see also* Brief for the United States as Amicus Curiae Supporting Appellees, *Heiser*, 735 F.3d 934 (No. 12-7101), 2013 WL 937817. The purpose is not to compensate those victims at the expense of innocent parties. The Court agrees that it is absolutely necessary to ensure that judgments are paid with property of terrorist states because using assets not owned by terrorist parties would *reduce* the cost of terrorism, a result clearly contrary to the public interest and statutory purpose. As noted above, that risk is not present here. BCS was both originator and beneficiary of the EFTs at issue. Commerzbank, who would have a claim against the intermediary bank under the Second Circuit's interpretation of the U.C.C., has disclaimed any interest in those funds. It is

6

clear that neither the originator nor the beneficiary of the EFTs is entirely innocent. In short, the EFTs are attachable.

      B.      Wyatt Plaintiffs' Motion to Stay Pending Appeal

The Wyatt Plaintiffs ask the Court to stay all proceedings –presumably referring to the distribution of the funds in the Court's registry – pending their appeal. As noted above, the Court has already issued an order to distribute the funds to the Gates Plaintiffs and that order remains in effect. To the extent that distribution by the Clerk of Court constitutes a proceeding in this Court, the motion is denied. The party seeking a stay pending appeal "must show that it has a significant probability of success on the merits; that it will face irreparable harm absent a stay; and that a stay will not injure the opposing party and will be in the public interest." *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006). The Wyatt Plaintiffs fail to demonstrate that they have a significant probability of success on the merits. The Court followed the clear mandate of the Seventh Circuit in ordering the distribution of the funds in the Court's registry. While the Wyatt Plaintiffs' are correct that the Seventh Circuit has the power to overturn its own decisions, it requires "a compelling reason to overturn circuit precedent." *McClain v. Retail Food Employers v. Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005). The Wyatt Plaintiffs have pointed to no compelling reason that the Seventh Circuit's previous ruling will be overturned. The Wyatt Plaintiffs have likewise not demonstrated that they will suffer irreparable harm if the funds are distributed to the Gates Plaintiffs. The irreparable injury the Wyatt Plaintiffs point to is the possibility that they will be denied their ability to recover the funds at issue. As the Seventh Circuit noted when denying the Baker Plaintiffs' motion to stay, "such risks are present any time [a] judgment requires a transfer of money or property. Those risks alone are not enough to call

for a stay of the mandate." *Gates v. Syrian Arab Republic*, No. 13-2280, slip op. 4 (7th Cir. July 30, 2013); (*See* Dkt. No. 251-1 p. 3).

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 6, 2014